

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 21, 2022

**BY CM/ECF**
The Honorable John G. Koeltl
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Tyaqan Pitt*, 22 Cr. 185 (JGK)

Dear Judge Koeltl:

      The defendant in the above-captioned case is scheduled to be sentenced on March 30, 2023 at 12:00 p.m. For the reasons set forth below, the Government believes that a sentence within the Guidelines range of 33 to 41 months' imprisonment would be sufficient, but not greater than necessary, to meet the purposes of sentencing.

    **I.  Offense Conduct**

      As described in the Presentence Investigation Report ("PSR"), since at least in or around January 2019, law enforcement officers with the United States Secret Service ("USSS") and the New York City Police Department ("NYPD") have been investigating a scheme to defraud banks by depositing counterfeit checks into bank accounts controlled by other members of the scheme. After the counterfeit checks were deposited into the bank accounts, money was quickly withdrawn from the accounts before the counterfeit checks were rejected, leaving the bank accounts with a negative balance. (PSR ¶ 12). Law enforcement officers identified the defendant, co-defendant Ivan Morgan, and two other individuals named Dajahn McBean and William Valdez (previously charged and sentenced in *United States v. Dajahn McBean and William Valdez*, 20 Cr. 226 (KPF)) as participants in the scheme. Members of the scheme referred to themselves as a gang known as "Real Ryte" on social media, and the defendant posted photographs of himself on social media boasting about his membership in the gang and the money that he was making by participating in the counterfeit check scheme, as depicted below:









The evidence of the defendant's involvement in the scheme included the following:

- On January 29, 2019, William Valdez and Dajahn McBean were arrested by the Westchester County Police Department and were found in possession of a loaded gun and numerous debit cards in the names of other individuals that were linked to the counterfeit check scheme. A search of Valdez's cellphone revealed numerous messages in which Valdez and the defendant discussed the counterfeit check scheme, including photographs of receipts that corresponded with bank accounts used for depositing counterfeit checks. For example, on January 7, 2019, Valdez and the defendant discussed depositing large quantities of counterfeit checks totaling over $27,000 into bank accounts controlled by members of the scheme. During one of the messages, the defendant indicated that he was creating the counterfeit check for Valdez ("cooking ya shit up"). (PSR ¶¶ 21-23).

- On May 17, 2020, the defendant and others were arrested in Queens while attempting to flee from law enforcement officers during a traffic stop. During a search of the vehicle, law enforcement officers recovered two firearms and a fake Pennsylvania driver's license containing the defendant's name but the name of another individual. During a search of the defendant's cellphone and corresponding Apple iCloud account, law enforcement found additional evidence of the defendant's involvement in the bank fraud scheme, including photographs of debit cards and bank receipts, photographs of identification cards in the names of other individuals, photographs of the defendant with large quantities of cash, personal identifying information for third parties, and multiple photographs of the defendant in possession of guns (PSR ¶ 24):



- The defendant also posted a video of himself on social media on September 21, 2021, depicting himself in front of a laptop with a photograph of a U.S. Treasury Check on his screen—the same type of check that had been deposited into numerous bank accounts used in furtherance of the scheme (PSR ¶ 25).

In total, the defendant's participation in the scheme involved an actual loss of at least $55,000 with intended losses amounting to more than $425,000. (PSR ¶ 26).

On March 24, 2022, an indictment was filed charging the defendant with participating in a bank fraud conspiracy, in violation of Title 18, United States Code, Section 1349 (Count One); and aggravated identity theft, in violation of Title 18, United States Code, Sections 1028A and 2 (Count Two).  The defendant was arrested on April 6, 2022, and an S2 superseding indictment (the "Indictment") was filed on May 5, 2022 charging the defendant and co-defendant Ivan Morgan in the same charging instrument.  (PSR ¶¶ 1-3).

## II. The Defendant's Plea and Applicable Guidelines Range

On November 30, 2022, the defendant pleaded guilty to Count One of the Indictment pursuant to a plea agreement.  Pursuant to U.S.S.G. § 2B1.1(a)(1), the plea agreement stipulated that the base offense level for Count One is 7.  Pursuant to U.S.S.G. § 2B1.1(b)(1)(G), the plea agreement stipulated that a 12-level increase applies because the intended loss was more than $250,000 but less than $550,000.  Pursuant to U.S.S.G. § 2B1.1(b)(2)(A)(i), the plea agreement stipulated that a two-level increase applies because the offense involved 10 or more victims. Pursuant to U.S.S.G. § 2B1.1(b)(11)(B)(i), the plea agreement stipulated that a two-level increase applies because the offense involved the production or trafficking of an unauthorized access device or counterfeit access device.  Assuming a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, the plea agreement stipulated that the total offense level is 20.  The plea agreement also stipulated that the defendant has zero criminal history points, resulting in a Criminal History Category of I.  As a result, the plea agreement stipulated that the applicable Guidelines range was 33 to 41 months' imprisonment.

In the PSR, prepared on February 23, 2023, the Probation Office similarly found that the Guidelines range was 33 to 41 months' imprisonment.  (PSR ¶¶ 34-46, 90).

## III. Discussion

### A. Applicable Law

Although *United States* v. *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. 220, 264 (2005).  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

Case 1:22-cr-00185-JGK   Document 59   Filed 03/22/23   Page 6 of 7

Page 6

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)   to afford adequate deterrence to criminal conduct;
> (C)   to protect the public from further crimes of the defendant; and
> (D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B.   A Sentence Within the Guidelines Range is Reasonable in this Case.

The Government submits that a sentence within the Guidelines range of 33 to 41 months' imprisonment is necessary in this case to reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense.

At the outset, a substantial term of incarceration is necessary to reflect the seriousness of the defendant's conduct and promote respect for the law.  Between at least January 2019 and September 2021, the defendant participated in a scheme to steal money from banks by depositing counterfeit checks into bank accounts controlled by members of the scheme.  The NYPD and USSS identified dozens of bank accounts that were used in furtherance of the scheme, with an estimated intended loss of approximately $425,838.12 and actual losses of approximately $55,705.34.  The defendant also played a key role in the scheme, creating counterfeit checks that were deposited into bank accounts and trafficking in personal identifying information, checks, and bank account information used in furtherance of the scheme.  The defendant boasted about his criminal activities on social media, posting photographs of himself with large quantities of cash and while editing a U.S. Treasury check, and posting messages about his affiliation with the Real Ryte gang.  During this timeframe, the defendant was also in possession of multiple firearms.

The defendant's participation in this scheme also cannot be described as a one-time mistake—On numerous occasions over the span of years, the defendant agreed with others to steal money from banks as part of this scheme, and he served as one of the suppliers for counterfeit checks, a task that required more specialized knowledge.  The defendant was also arrested by law enforcement in numerous jurisdictions across the country between 2018 and 2022, including New York, North Carolina, Georgia, Florida, and Massachusetts.  But these arrests did not stop the

defendant from continuing to engage in criminal activity. Even more concerning, the defendant did not stop committing crimes even after being arrested by federal authorities and detained in federal pretrial custody. Rather, the defendant was found in possession of a concealed contraband weapon in his groin area prior to appearing before the Court on September 8, 2022, *see* USMS Seizure Report, attached hereto as Exhibit A, and he was also later disciplined on September 19, 2022 for refusing to obey an order by BOP staff. Based on the defendant's years-long participation in a bank fraud conspiracy, his possession of guns, and his continued participation in criminal activity even while in custody, the Government has serious concerns about the potential danger that the defendant poses to the community. Based on this record, the Government does not believe that there is a valid reason for the defendant to receive a sentence below the stipulated Guidelines range of 33 to 41 months' imprisonment.

## V. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence within the Guidelines range of 33 to 41 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:    /s/ Andrew K. Chan
      Andrew K. Chan
      Assistant United States Attorney
      (212) 637-1072

cc: Michael W. Martin, Esq.